# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MARGIE FLORES JONES,

        Plaintiff,

   v.

MEGAN J. BRENNAN, POSTMASTER
GENERAL, U.S. POSTAL SERVICE,

       Defendant.

Civil No. 17-1056 (NLH/JS)

**OPINION**

---

**APPEARANCES**:

JOSÉ LUIS ONGAY
527 COOPER STREET
CAMDEN, NJ 08102

   *Attorney for Plaintiff Margie Flores Jones.*

DANIEL J. GIBBONS
OFFICE OF THE UNITED STATES ATORNEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102

   *Attorney for Defendant Megan J. Brennan, Postmaster
General, U.S. Postal Service.*

**HILLMAN**, District Judge

This case concerns allegations of employment discrimination on the basis of age, sex, race, and national origin. Presently before the Court is Defendant Megan Brennan's Motion for Summary Judgment and Plaintiff's Motion to Amend her Amended Complaint.

For the reasons expressed below, the Court will grant

Defendant's Motion for Summary Judgment and deny Plaintiff's

Motion to Amend.

**BACKGROUND**

The Court takes its facts from the parties' statements of

material facts.  The Court will note relevant disputes.

Plaintiff Margie Flores-Jones was a Level 20 Postmaster at

the Glassboro, New Jersey Post Office in 2008 when she applied

for a Level 22 Postmaster position at the Vineland, New Jersey

Post Office.  Plaintiff is a Puerto Rican woman who was 56 years

old at the time of her application.  Up to that point, Plaintiff

had a 38-year career with the Postal Service.  During that time,

she had served as postmaster of Maple Shade, New Jersey;

Glassboro; Wilmington, Delaware and Vineland (serving there for

approximately nine years).  Although the Court will not list

them, the Court notes Plaintiff received numerous awards for her

work and has had an admirable career of public service to the

Postal Service.

Plaintiff was not the only applicant.  She was one of

three, which included Daniel Herzog (white, male, and 52 years

old at the time of application) and Raymond Goss.  Both of the

other applicants also had long, successful careers with the

Postal Service, with Herzog serving for 32 years at the time and

Goss for 23 years.  All three individuals were interviewed by

Post Office Operations Manager, Denise Mason ("POOM Mason"), and District Manager, Joanna Korker ("DM Korker"). The interviews took place on September 10 and 15, 2008.

POOM Mason selected Herzog for the position and DM Korker concurred in the selection.[1] POOM Mason contemporaneously drafted a memorandum that explained her reasoning for the selection of Herzog and generally summarized the qualifications of each applicant, their performance in the interviews, and the reasons for her selection (the "Selection Memo").[2] The Selection Memo stated the following concerning Plaintiff:

> Margie Flores Jones has been with the postal service for 38 years. She is the Postmaster of Glassboro NJ EAS-20. Margie holds a master's degree from Marymount University and she stated in her interview that she is currently working on her Doctorate Degree. Margie was well spoken during the interview however she could not answer questions related to EXFC grouping reports, the district's current performance in EXFC and last mile failures. Margie could not answer questions related to the assumptions that go into the calculation nor could she answer how dps factors into the cdpom calculation. When asked how Vineland was doing in cdpom Margie did not know and began to fumble through her papers. Margie was previously the Postmaster of Vineland until she left that position in August 2006. When Margie left Vineland she was 3.2% over plan and 2.0% over sply ytd in function

---

[1] Plaintiff disagrees that it was solely POOM Mason who selected Herzog for the position, stating that DM Korker "participated in the decision." (Pl.'s SOMF ¶¶ 4-7.) As discussed <u>infra</u>, this is not a material dispute of fact.

[2] Plaintiff disagrees that the memorandum fully and accurately explains Plaintiff's qualifications and asserts Plaintiff was better qualified than Herzog. (Pl.'s SOMF ¶¶ 7-8.) Defendant does not dispute that Plaintiff was qualified for the position.

2. She was .5% over plan and .7% to sply ytd in function 4. She ended the year 1.1 % over plan and 5.2% over sply in salaries and benefits. When she arrived in Glassboro the office was 3.3% to plan and -.7% to sply ytd in function 2. Function 4 was .7% to plan and -3.2% to sply ytd. Currently in Glassboro Margie is 2.5% over plan and -.5% to sply ytd in function 2. She is .9% over plan and -3.8% to sply ytd in function 4[.] When Margie arrived the TOE in Glassboro was -1.8% to plan and a cell 13 on the NPA. Currently the office is .6% over plan and a cell 3 NPA. This has resulted in the overall score for the office to decrease from 8.40 to 3.80. Margie provided an incorrect assessment of the overall VOE score in Vineland she stated that the office was currently at 56.3 ytd when in fact they are at 61.9 ytd. She also stated that Glassboro's VOE has increased since her arrival however it has decreased from 68.8 to 67.9. Margie provided an incorrect assessment of the revenue for Vineland, she stated that it was down $159,172.00. Her response was far above the actual amount. She stated that TOE was an area of opportunity when in fact the office is currently trending positively by .7%. When asked why I should select you Margie talked about her education and just reiterated what was on her application. Margie did not visit the office prior to the interview.[3]

POOM Mason let Plaintiff know of her decision on September 19, 2008 via telephone and followed up with a letter formally memorializing the decision on October 1, 2008.

On December 31, 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she had not been selected for the position because of her age,

---

[3] The Selection Memo references many internal post office statistics by acronym. The Court will explain them as relevant to the arguments made by the parties, _infra_.

race, and national origin.[4]  A hearing was held before Administrative Judge Julie Procopiow Todd ("AJ Todd") on June 11 and 18, 2013 on these claims.  A sex discrimination claim was not included in her complaint but was referenced in a written closing argument made after the hearing and again on administrative appeal.

After concluding administrative proceedings, Plaintiff brought her claims in this Court by complaint on February 16, 2017.  Plaintiff filed claims under Title VII for race, national origin,[5] and sex discrimination and under the ADEA for age discrimination.  She amended the complaint on February 28, 2017 and Defendant answered on May 12, 2017.  Discovery ensued.

On June 21, 2018, Defendant filed the instant Motion for Summary Judgment.  Plaintiff responded and filed a Motion to Amend the Amended Complaint on August 20, 2018.  Both motions are fully briefed and ripe for adjudication.

---

[4] Plaintiff also asserted the decision was in retaliation for previous complaints she had made.  That is not relevant to this case because Plaintiff declined to bring that claim in this Court.

[5] Puerto Ricans can assert a national origin claim even though they are American citizens by birth.  In re Chiang, 385 F.3d 256, 269 (3d Cir. 2004) ("We have held, for example, that the term Puerto Rican can designate national origin for purposes of a federal discrimination suit . . . .").

**ANALYSIS**

**A.    Subject Matter Jurisdiction**

This Court possesses jurisdiction over this case pursuant to 28 U.S.C. § 1331.

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255).

6

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a

showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**C.    Summary Judgment**

Defendant presents three arguments favoring dismissal of Plaintiff's claims.  First, Defendant argues Plaintiff's sex discrimination claim must be dismissed because this Court does not possess jurisdiction to adjudicate it.  Second, Defendant argues that Plaintiff fails to state a prima facie claim for age discrimination.  Third, Defendant argues Plaintiff has not established that the legitimate, non-discriminatory reasons for not promoting Plaintiff were mere pretext.

Before determining the merits of each of these arguments, this Court will first address Defendant's second argument concerning the age discrimination claim.  In her opposition brief, Plaintiff withdraws her age discrimination claim.  (Pl.'s Opp'n Br. 3.)  Therefore, this Court will grant Defendant's

request to dismiss this claim.[6]  This Court will address the

other two arguments in turn.

     a. <u>Whether this Court Possesses Subject Matter
        Jurisdiction over the Sex Discrimination Claim</u>

Defendants argue this Court does not possess subject matter

jurisdiction over Plaintiff's sex discrimination claim and

therefore must dismiss it.  Defendant reasons that Plaintiff has

failed to exhaust her administrative remedies because she never

raised the issue of sex discrimination in her initial complaint

nor was the issue ever accepted by the reviewing agency.

Plaintiff does not directly dispute this point.[7]  First,

Plaintiff admits she did not present this argument in her

initial complaint, nor did the agency raise this issue for

review.  (<u>See</u> Pl.'s Mot. to Amend 1 ("[T]his cause of action, as

the Defendant has correctly stated, was not alleged in the

Informal Counseling or the Formal Complaint of Discrimination

filed during the administrative process in the Equal Employment

Opportunity Commission.").)  Instead, Plaintiff argues the sex

_____

[6] Defendant appears to be correct about the state of the law in
this Circuit.  If the age difference between a plaintiff and the
individual who took a plaintiff's spot is less than five years,
a plaintiff cannot legally establish a prima facie case for age
discrimination.  (<u>See</u> Def.'s Summ. J. Br. 7-8 (collecting cases
from within this Circuit).)

[7] The Court notes that most of this argument is contained in
Plaintiff's Motion to Amend, which Plaintiff asked this Court to
incorporate by reference into her opposition brief.  (Pl.'s
Opp'n Br. 12.)

discrimination claim was included "in her written closing argument at the close of the Administrative Hearing" and "in her appeal to the Office of Federal Operations."  Second, Plaintiff states Defendant has been on notice of this claim because she is a woman who was subject to an adverse employment decision.  The import, according to Plaintiff, is that there would be no prejudice to Defendant to allow this claim to go forward.

The law is clear.  "[A] federal employee seeking redress for unlawful workplace discrimination . . . must first exhaust administrative remedies against the federal employer prior to filing suit in federal court" – here the EEOC.  Marley v. Donahue, 133 F. Supp. 3d 706, 715 (D.N.J. 2015).  See 42 U.S.C. § 2000e-16(c); see also 29 C.F.R. § 1614; Wilson v. MVM, Inc., 475 F.3d 166, 173 (3d Cir. 2007).  "Failure to exhaust administrative remedies, while not a jurisdictional defect, is a ground to dismiss a case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Devine v. St. Luke's Hosp., 406 F. App'x 654, 656 (3d Cir. 2011).[8]

A federal employee asserting a Title VII claim "must pursue and exhaust administrative remedies before initiating an action in federal court."  Id. at 715 n.16 (citing Williams v. Runyon,

---

[8] Thus, Defendant's assertion that this is a jurisdictional issue is incorrect.  Ultimately, this does not affect the decision of the Court, but merely the basis for it.

130 F.3d 568, 573 (3d Cir. 1997)) (emphasis added). Courts have been clear concerning what steps must be taken to successfully exhaust administrative remedies. Exhaustion requires, in part, the filing of a "formal complaint with the EEOC." Id. (citing 29 C.F.R. § 1614.106). But, exhaustion requires not only consideration of whether a complaint was filed, but which claims were included. To determine what claims have been administratively exhausted, the Third Circuit directs district courts to consider "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (citing Hicks v. ABT Assoc., Inc., 572 F.2d 960, 966 (3d Cir. 1978)).

In other words, the "permitted scope of the lawsuit is any claim that should have been included in a reasonable investigation conducted by the EEOC, based upon the information contained in the [c]harge." Carr v. New Jersey, No. 09-913 (WJM), 2010 U.S. Dist. LEXIS 59987, at *9 (D.N.J. June 17, 2010) (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). When a plaintiff does not include a claim in her EEOC complaint, that plaintiff has failed to exhaust administrative remedies as to that claim and that claim must be dismissed. Green v. Potter, No. 08-597 (JBS/KMW), 2010 U.S. Dist. LEXIS 62959, at *25-26 (D.N.J. June 23, 2010).

Plaintiff's sex discrimination claim fails under this test. Plaintiff did not check the box for discrimination on the basis of sex in her original EEOC charge. There was no other indication in the facts disclosed that Plaintiff's sex was a motivating factor in any adverse action taken.[9] Plaintiff did request an amendment, but never requested a sex discrimination claim be added. When she was told in March 2009 which claims were accepted by the EEOC for investigation, Plaintiff did not state that sex discrimination was inadvertently left out or should be included. In fact, it was not until the investigation was over and all evidence was submitted at the hearing that Plaintiff first asserted a sex discrimination claim – and even then, it was merely mentioned in passing. Sex discrimination was not included in the charge, nor is that surprising since there is no record evidence to support such a claim. Plaintiff's unexhausted and unsupported sex discrimination claim will be dismissed.

Plaintiff requests this Court grant her Motion to Amend her amended complaint. Plaintiff argues she should be allowed to amend her amended complaint because it will not cause undue delay, is not in bad faith, and there will be no prejudice to

---

[9] The Court notes the sex of both Plaintiff and Herzog was mentioned in different filings before the EEOC, but there was never an indication from Plaintiff that she believed this played a part in the decision not to select her for the position.

12

Defendant.  Plaintiff does not present any new facts which would change the facts discussed and found dispositive, <u>supra</u>.  What Plaintiff does not explain – and Defendant rightfully points out – is why Plaintiff would request to amend her complaint to state a claim which is already stated.  To ask the question is to answer it.

Regardless, this Court will deny Plaintiff's motion. Generally, leave to amend is freely granted "when justice so requires," but may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."  <u>Harrison Beverage Co. v. Dribeck Imps., Inc.</u>, 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted).

Amendment would be futile because no amendment could cure the defect which occurred at the preceding administrative stage. Plaintiff has presented no indication in her motion what new allegations, if any, would be included in a new complaint that could possibly alter the Court's course.  Because amendment in this case would be futile, whether there is delay, bad faith, or

prejudice is irrelevant.  Accordingly, this Court will grant Defendant's Motion for Summary Judgment on this point and deny Plaintiff's Motion to Amend.

b. Whether Plaintiff has Established Pretext

Defendant argues Plaintiff has not established pretext which warrants dismissal of both the remaining claims, race and national origin.  Defendant's argument essentially boils down to one point: Plaintiff's only argument – and evidence – merely reflects her subjective belief that she was a better candidate for the position, not that she was discriminated against.  This, Defendant asserts, is insufficient to allow these claims to survive summary judgment because the test is not whether Defendant made a bad business decision, but whether there was a discriminatory motive in non-selection.

The rest of the arguments made by Plaintiff, Defendant claims, are irrelevant for other reasons.  Plaintiff disagrees, pointing to alleged factual inconsistencies in the Selection Memo and credibility issues of Defendant.  The Court agrees with the Defendant.

**i. Defendant's Legitimate, Non-Discriminatory Reason**

The parties agree this case must be decided under the McDonnell Douglas framework, as no direct evidence of discrimination has been presented.  Defendant does not dispute that Plaintiff has shown a prima facie case for both the race

14

and national origin claims.  Thus, the Court is left to examine the legitimate non-discriminatory reason provided and whether Plaintiff can show it is mere pretext.  First, the Court addresses the proffered legitimate, non-discriminatory reason. Defendant claims the reason Herzog was selected over Plaintiff was based on an examination of each candidate's experience and education, interview performance, and job performance based on postal statistics.  POOM Mason summarized this in the Selection Memo.

It does not appear that Plaintiff disputes that Defendant has met its burden of production here.  Under the law,

> [t]he employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision . . . . The employer need not prove that the tendered reason <u>actually</u> motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original) (citations omitted).  Regardless of Plaintiff's position, the Court finds Defendant has met its burden of production as, if taken as true, Defendant has provided a legitimate, non-discriminatory reason for not selecting Plaintiff.

### ii. Overview of Plaintiff's Arguments and Controlling Law

Although Plaintiff does not argue Defendant has not provided a legitimate, non-discriminatory reason for her non-selection, Plaintiff does claim that this reason is pretextual. Generally, the Third Circuit has held:

> to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes, 32 F.3d at 764. A plaintiff's evidence must "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Id. (citations omitted). To show pretext, the relevant standard requires Plaintiff to:

> "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes, 32 F.3d at 765. In simpler terms, he must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.

Keller v. Orix Credit All., 130 F.3d 1101, 1109 (3d Cir. 1997) (emphasis added).

16

Plaintiff makes the following arguments concerning pretext:

- Certain performance statistics cited in the Selection Memo should not have been considered a performance problem by Defendant;

- The subjective impressions of Plaintiff's interview performance in the Selection Memo do not match Plaintiff's impression of her own performance;

- Certain negative performance statistics were not within Plaintiff's control;

- POOM Mason declined to discuss her reasons for not selecting Plaintiff for the position with a third-party, Evelyn Hunter;

- There is an inconsistency in the record over whether POOM Mason or DM Korker was the so-called selecting official;

- Herzog did not have the training the Selection Memo asserted he had;

- Plaintiff answered questions correctly which the Selection Memo stated were incorrectly answered;

- One of Plaintiff's performance statistics was not correctly cited in the Selection Memo, to the detriment of Plaintiff; and

- Plaintiff had to contact a third-party, Frank Murphy, in order to schedule her interview, while the other candidates were contacted to schedule an interview date and time.

The Court will examine these arguments below.

### iii. Plaintiff's Arguments Not Legally Supportive of Pretext

Defendant argues the majority of Plaintiff's arguments fall within a category of arguments that are insufficient to rebut a legitimate, non-discriminatory reason for an employer's action. Defendant argues a "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. In other words, "it is not th[e] court's role to second-guess an employer's business judgment as to who is more qualified for the job." Dungee v. Ne. Foods, 940 F. Supp. 682, 689 (D.N.J. 1996) (citing Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)). Cf. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1993) ("[P]retext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.").

Defendants are correct. What Plaintiff would have the Court do is deconstruct the Selection Memo and substitute its own judgment for the Defendant's subjective analysis of the Plaintiff's experience, postal statistics, and interview performance. Whether specific performance statistics should have been considered a "performance problem" asks this Court to second-guess Defendant's business decision, which it cannot do.[10] Similarly, whether Plaintiff believes her interview performance was better than noted is just another variety of this same type of impermissible argument.[11]

Defendant argues Plaintiff's citation to extenuating circumstances for poor postal statistics does not support a

---

[10] Plaintiff makes these arguments in attacking what she has termed Defendant's Fifth, Seventh, Eighth, Eleventh, and Twelfth Reasons for Non-Selection. (Pl.'s Opp'n Br. 27, 28-29, 31-33.) Plaintiff also makes this type of argument, on different grounds in two other parts of her brief concerning her performance in Glassboro and her qualifications. (Pl.'s Opp'n Br. 38-40.)

[11] Plaintiff makes these arguments in her First and Tenth Reason for Non-Selection. (Pl.'s Opp'n Br. 24-25, 30-31.) Plaintiff also makes argument concerning her performance at Glassboro and her "alleged poor interview." (Pl.'s Opp'n Br. 40-41.) Moreover, the case law is clear that an employer's subjective impression of an individual's interview performance is appropriate in a selection decision – and may even serve as the sole basis for such a decision. See Conner v. LaFarge N. Am., Inc., 343 F. App'x 537, 542 (11th Cir. 2009) (finding that solely deciding selection based on interview performance is not evidence of pretext); Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1153, 1176 (D.N.J. 1996) ("How an employee presents himself or herself at an interview is often a determining factor in awarding a position.").

finding of pretext.  The Court finds Plaintiff's arguments

concerning her inability to control certain statistics is

inapposite.  The Third Circuit was confronted with similar

arguments in Keller v. Orix Credit Alliance, 130 F.3d 1101 (3d

Cir. 1997).  In that case, the Third Circuit analyzed whether an

individual's inability to reach a $1.5 million funding goal due

to factors beyond his control could be used to satisfy the first

prong of the Fuentes test.  Id. at 1109-1110.  There, the Third

Circuit found the question posed was "not whether [plaintiff]

could have done better" but "whether the evidence shows that it

was so clear that [plaintiff] could not have done better that

[defendant] could not have believed otherwise."  Id. at 1109.

In this case, no evidence has been presented by Plaintiff that

shows it was so clear Plaintiff could not have done better that

Defendant could not have believed otherwise.  Those arguments do

not support pretext.[12]

Finally, this Court addresses arguments Defendant asserts

do not fit into either of the two Fuentes prongs, making them

legally inapplicable, or which the Court finds are unsupported

by the record.  As explained supra, if the evidence does not

---

[12] Plaintiff makes these arguments in her Fourth, Sixth, and
Ninth Reason for Non-Selection.  (Pl.'s Opp'n Br. 24-25, 30-31.)
Plaintiff also makes similar arguments stating that the total
office expense at Glassboro and her failure to transfer two
postal carriers who had their routes eliminated was out of her
control.  (Pl.'s Opp'n Br.37-38.)

show the proffered legitimate reason is unworthy of credence or that discrimination was the motivating cause in not selecting Plaintiff in this case, then the evidence is irrelevant to a decision on pretext. Plaintiff presents three arguments. The Court will address each in turn.

First, Plaintiff argues that an individual named Evelyn Huntley called POOM Mason after Plaintiff was not selected and that POOM Mason would not discuss the reasons for her non-selection of Plaintiff. This does not support pretext, as it does not challenge the proffered reason or tend to show discrimination was the motivating factor. In fact, it seems to the Court somewhat odd that Plaintiff would expect POOM Mason to discuss Plaintiff's candidacy with anyone other than her and those directly involved in the selection process. To do otherwise would be at best a breach of protocol and worse a breach of privacy.

Second, Plaintiff argues there is an inconsistency in the testimony of POOM Mason and DM Korker concerning which one of them was the so-called "selecting official." It appears clear from the Selection Memo that POOM Mason made the selection and that DM Korker concurred in the selection. This fits entirely with the testimony as described by Plaintiff. The Court finds this does not support pretext because it addresses neither of the Fuentes prongs.

Finally, Plaintiff argues the Selection Memo incorrectly stated that Herzog had "extensive knowledge of DPS Processing." To support this assertion, Plaintiff cites Herzog's 991,[13] which Plaintiff claims shows he had not taken a course in DPS processing. Plaintiff admits, however, that Herzog had four months of experience with DPS processing while he was the Officer-in-Charge ("OIC") at the Vineland Post Office. The record evidence shows that Herzog received this training, even though a certificate was not entered into evidence, because POOM Mason stated Herzog received this training. Plaintiff does not cite record evidence to the contrary. Thus, this argument fails to show pretext.

Accordingly, the Court finds the arguments cited here cannot legally factor into its pretext analysis.

### iv. Plaintiff's Other Arguments Concerning Pretext

The Court now turns to Plaintiff's remaining arguments regarding pretext. Plaintiff asserts, and the record supports, some disagreement between Plaintiff's memory of the interview and its description in the Selection Memo as well as one incorrectly cited postal statistic. Additionally, Plaintiff

---

[13] The 991 referenced appears to be Herzog's application for the Vineland Postmaster position. As such, it does not necessarily include all of Herzog's credentials.

asserts there was a difference between her and other candidates in scheduling interviews.

First, the Court considers Plaintiff's interview and the postal statistic. Plaintiff asserts she did answer questions concerning City Delivery Pivoting Opportunity Module ("CDPOM") and Delivery Point Sequencing ("DPS") and knew Vineland's CDPOM number. (Pl.'s Opp'n Br. 25.) But, the Selection Memo states: "Margie could not answer questions related to the assumptions that go into the calculation nor could she answer how dps factors into the cdpom calculation" and "[w]hen asked how Vineland was doing in cdpom Margie did not know and began to fumble through her papers." The Selection Memo also states that when Plaintiff left her position as Vineland Postmaster, she was 1.1% over budget in salaries and benefits. She was only 0.6% over budget.

Second, Plaintiff states that she was not scheduled for an interview but had to ask an individual named Frank Murphy to contact the individuals scheduling interviews to ensure she received one. The others interviewed were contacted to schedule the date and times of their interviews.

As stated supra, Fuentes guides this Court's analysis as to whether these two items, individually, collectively, or in light of all the evidence, support a finding of pretext sufficient to defeat summary judgment. The Court may only allow Plaintiff's

claims to proceed past summary judgment if this Court finds a reasonable jury could either disbelieve Defendant's legitimate, non-discriminatory reason or believe invidious discrimination was the real reason for the non-selection decision. To be clear, a reasonable jury must believe "not merely that the employer's proffered reason was wrong, but that it was <u>so</u> <u>plainly wrong</u> that it <u>cannot</u> have been the employer's real reason." <u>Keller</u>, 130 F.3d at 1109 (emphasis added).

Considering the evidence presented in opposition, the Court concludes summary judgment is appropriate. The Court finds the minor disagreements between Plaintiff's testimony at the administrative hearing and the Selection Memo do not show Defendant's legitimate, non-discriminatory reason was "so plainly wrong" that a reasonable jury could find it could not have been the real reason. Additionally, the Court finds the fact that Plaintiff was required to work through an intermediary to schedule her interview while the other candidates were contacted directly cannot allow this case to proceed past summary judgment. This assertion, devoid of any other evidence suggesting discrimination, is not sufficiently serious nor a gross enough deviation to show pretext.

Taken together, this Court finds that the evidence presented by Plaintiff supporting pretext could not convince any reasonable juror that the proffered reasons for non-selection

were unworthy of credence.  The Court agrees with Defendant: at its core, this case is founded on Plaintiff's subjective belief that she was better qualified and performed better in her interview than Herzog.  That argument is simply inapplicable to a pretext analysis and cannot support a finding of discrimination.  On that basis, the Court cannot and will not second-guess Defendant's business decision.  Thus, there is no dispute of material fact that would allow this case to proceed past summary judgment.

## CONCLUSION

For the reasons stated herein, this Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion to Amend.

An appropriate Order will be entered.


Date: April 16, 2019
At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.